UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

LISA GUZZONE

                Plaintiff,

    - against -

MICHAEL ZAZZA

                Defendant.

------------------------------------------------------------x

Docket No: 19 CV _____

COMPLAINT

Plaintiff by her attorneys, ROSEN LAW LLC for its complaint in this action, alleges as follows:

## JURISDICTION AND VENUE

**1.     That the United States District Court for the Eastern District of New York has jurisdiction over the parties, pursuant to Title 28 of the United States Code §1332(a)(1) as the Plaintiff and Defendant are citizens of different states and supplemental jurisdiction pursuant to Title 28 of the United States Code §1167, which provides the District Court with jurisdiction based on diversity of citizenship.**

2.     **The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.**

3.     **The United States District Court for the Eastern District of New York has venue pursuant to Title 28 of the United States Code §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim set forth in this complaint, and the property which is the subject of this action is located in Kings County, City and State of New York, within in the Eastern District of New York.**

4.     Plaintiff demands a jury trial.

5.      This is an action for, *inter alia*, fraud and fraudulent inducment.

## AS AND FOR A FIRST CLAIM FOR RELIEF FOR
## FRAUD AND FRAUDULENT INDUCEMENT

6.      Plaintiff is an individual residing at 174 Amity Street, Apt. 2R, Brooklyn, New York.

7.      Upon information and belief, Defendant is an indiviual residing at 35 Riverdale Avenue East, Tinton Falls, New Jersey.

8.      Defendant is Plaintiff's nephew.

9.      Defendant, as Plaintiff's nephew was trusted by Plaintiff and Plaintiff relied upon Defendant and the representations that Defendant made to Plaintiff as set forth in this Complaint.

10.     As Plaintiff's nephew, Plaintiff trusted and relied upon Defendant and the representations that Defendant made to Plaintiff which included the representations that Defendant could "help" Plaintiff make money in a real estate investment.

11.     On or about September 30, 2010, Defendant solicted Plaintiff to make an investment in "Eleven Broadway Managing Member LLC", a Delaware limited liability company (the "LLC").

12.     The LLC is not authorized to fconduct business in the State of New York.

13.     At all times, Defendant was the managing member of the LLC.

14.     Defendant told Plaintiff that he would sell to Plaintiff, two and one half percent (2 ½%) of the membership interests in the LLC.

15.     Defendant told Plaintff that she would become the owner of two and one half percent (2 ½%) of the membership interests in the LLC, which would develop and own a

project consisting of approximately 200,000 square feet in a fifteen (15) story building, containing approximately 150 apartments plus a parking garage and retail space located at the Property (the "Project").

16.    The Project was to be located at the real property located at 11 Broadway, Brooklyn, New York, also known as Block 2468, Lots 1, 6, 29, 30, 31 and 32 on the Tax Map of the City of New York, County of Kings (the "Property").

17.    Defendant told Plaintiff that demolition and excavation work at the Project was completed at the time that Defendant solicited Plaintiff to invest in the LLC.

18.    The representation that the demolition and excavation work at the Project was completed at the time that Defendant solicited Plaintiff to invest in the LLC was false.

19.    The representation that the demolition and excavation work at the Project was completed at the time that Defendant solicited Plaintiff to invest in the LLC was known to be false by Defendant.

20.    Defendant told Plaintiff that the Project would be built and completed by approximately 2011 and that the Project would be sold by approximately 2018, and at that time, substantial profits from the sale of the Project would be paid to Plaintiff, along with return of her initial investments which were to be returned to Plaintiff no later than approximately October 2013.

21.    Defendant told Plaintiff prior to Plaintiff investing in the LLC, that Plaintiff would earn at least 22% annual rate of return by making the investment in the LLC by buying membership interests in the LLC.

22.    The LLC was formed on or about November 2, 2006.

23.     Defendant told Plaintiff that she would have to pay $250,000 for the two and one half percent (2 ½%) of the membership interests in the LLC and that she would receive one half of the proceeds, interest returns, cash flow and re-finance proceeds from the Project and the LLC.

24.     On or about October 1, 2010, Plaintiff gave Defendant a check in the amount of $250,000 as and for her purchase of two and one half percent (2 ½%) of the membership interests in the LLC.

25.     Defendant based the $250,000 sale price for two and one half percent (2 ½%) of the membership interests in the LLC upon a valuation of $10,000,000 for all of the membership interests of the LLC.

26.     The LLC had a true value of significantly less than $10,000,000 at the time that Defendant solicited Plaintiff to make any of the payments to the LLC.

27.     Had Defendant provided a private placement memorandum to Plaintiff, detailing the risks and rewards of making an investment in the LLC, Plaintiff would not have invested in the LLC.

28.     Defendant represented to Plaintiff that the he was the sole owner of "Eleven Broadway Managing Member LLC", a Delaware limited liability company.

29.     Defendant represented to Plaintiff that Plaintiff would be enttitled to all profits, proceeds, revenues, rental payments, capital and loan repayments, interest payments, distributions and all other payments of any kind to which the LLC would be entitled to receive for the two and one half percent (2 ½%) of the membership interests in the LLC.

30.     Defendant represented to Plaintiff that Defendant would be a member of the LLC, which would own a real estate development that was under construction at the Property,

and that when the development was completed, there would be a refinancing of the debt for the project, and when the refinancing of the debt was accomplished, Defendant would receive 100% of the proceeds from the refianncing after the Plaintiff's investment of $250,000 was returned to Plainitff.

31.      Defendant represented to Plaintiff that after the return of the Plaintiff's investment of $250,000, then, Defendant would receive 100% of the proceeds from the refianncing until Defendant received his return of investment.

32.      Defendant never told Plaintiff how much money Defendant actually contributed to the LLC.

33.      Defendant never registered the sale of the LLC interests to Plaintiff with the United States Securities and Exchange Commission.

34.      Defendant never received an exemption from registration of the sale of the LLC interests to Plaintiff with the United States Securities and Exchange Commission.

35.      Defendant never registered the sale of the LLC interests to Plaintiff with the New York State Department of Law.

36.      Defendant never received an exemption from registration of the sale of the LLC interests to Plaintiff with the New York State Department of Law.

37.      Defendant represented to Plaintiff that after both Plaintiff and Defendant received the return of their investments in the LLC, then, Plaintiff would receive 100% of the next flow of funds from the LLC so that Plaintiff would earn a return on investment of twenty two percent (22%) per annum.

38.      Defendant reprsented to Plaintiff that Plaintiff would receive a 22% per annum return on investment and that Plaintiff's entire investment of $250,000 plus the 22%

per annum return would be paid to her within thirty six months from Plaintiff making the investment in the LLC.

39.     Defendant represented to Plaintiff that if Plaintiff did not receive a return of Plaintiff's entire investment of $250,000 plus the 22% per annum return within thirty six months from Plaintiff making the investment in the LLC, then Defendant would pay a return of 7% per annum to Plaintiff until Plaintiff received her entire return of investment with interest.

40.     Plaintiff paid the sum of $250,000 to the LLC on or about October 1, 2010.

41.     Thereafter, Defendant solicited Plaintiff again and sold Plaintiff an additional 2.4% interest in the LLC, and Defendant sold Alicia Guzzone-Cash 0.6% interest in the LLC for an additional payment of $200,000, which Plaintiff paid to the LLC on or about November 1, 2011.

42.     Plaintiff paid a total of $450,000 to the LLC at Defendant's request.

43.     Each year, from approximately November 1, 2012 to approximately July 2018, Defendant spoke to Plaintiff and represented to Plaintiff that her investment was secure and that she would be receiving her $450,000 plus substantial profits from the LLC.

44.     Each year, from approximately November 1, 2012 to approximately July 2018, Defendant's representions to Plaintiff, that her investment was secure and that she would be receiving her $450,000 plus substantial profits from the LLC was knowingly false.

45.     Defendant has been perpetrating a continuing fraud upon Plaintiff.

46.     To this date, Plaintiff has received no monies at all from Defendant.

47.     To this date, Plaintiff has received no monies at all from the LLC.

48.     To this date, Plaintiff has received no return of her investment in the LLC.

49.     To this date, Plaintiff has received no return of the monies that she paid to the LLC.

50.     To this date, Plaintiff received no interest or return of any kind of her investment in the LLC.

51.     To this date, Plaintiff never received any IRS K-1 form indicating her profits and/or losses made by her in the LLC.

52.     Defendant has never provided Plaintiff with any tax returns or K-1's for the LLC.

53.     Defendant has taken the sum of $450,000 from Plaintiff and had no intension of returning the $450,000 with or without any profit or interest.

54.     Defendant represented to Plaintiff that Plaintiff would receive "net rental cash flow" from her investment in the LLC.

55.     Defendant's represnentations to Plaintiff were fraudulent when made.

56.     Defendant's representations to Plaintiff were intended to induce Plaintiff into making an investment in the LLC.

57.     Plaintiff paid the sum of $450,000 to the LLC, based on the material misrepresentations made by Defendant to Plaintiff.

58.     Plaintiff relied upon the representations made by Defendant.

59.     Plaintiff has suffered damages as a result of the material misrepresentations made by Defendant to Plaintiff.

60.     Plaintiff has recently learned that the actions of Defendant were a ponzi scheme, where he was soliciting monies from various persons, never intending to return the principal or profit to the investors.

61.     Upon information and belief, Alexandria Spanakos and Andrea Spanakos paid $250,000 on or about November 1, 2010 to Defendant or the LLC for a similar investement in the LLC and never received a return of this investment or any profit.

62.     Plaintiff has recently learned that there was no possibility of Plaintiff receiving a return of her investment within 36 months of the making the investment with Defendant.

63.     Upon information and belief, Defendant has been continually telling Plaintiff that she would be receiving a return of her investment with profit, with the last representation made by Defendant to Plaintiff on or about July 2018.

64.     ZAGS Broadway LLC ("ZAGS"), a Delaware limited liability company, was the owner of the Property.

65.     Defendant never told Plaintiff that ZAGS was the owner of the Property.

66.     On or about May 19, 2010, Block 2468, Lots 1, 6, 29, 30, 31 and 32 on the Tax Map of the City of New York, County of Kings were merged into Block 2468, Lot 1 on the Tax Map of the City of New York, County of Kings.

67.     The Property was owned by ZAGS.

68.     ZAGS is or was owned by GS 11 Broadway Member LLC and the LLC.

69.     ZAGS agreed to convey title to the Property to 11 Broadway Owner LLC, a Delaware limited liability company ("11 Broadway Owner LLC").

70.     On November 16, 2007, ZAGS conveyed title to the Property to 11 Broadway Owner LLC.

71.     Defendant did not disclose to Plaintiff that prior to Plaintiff making an investment in the LLC, ZAGS conveyed title to the Property to 11 Broadway Owner LLC.

72. Defendant knew that ZAGS conveyed title to the Property to 11 Broadway Owner LLC at the time that he solicited Plaintiff to invest in the LLC.

73. Defendant represented to Plaintiff that the LLC would be the managing member of ZAGS.

74. Defendant's representation to Plaintiff that the LLC would be the managing member of ZAGS was false.

75. Defendant's representation to Plaintiff that the LLC would be the managing member of ZAGS was known to be false by Defendant.

76. Defendant's representation to Plaintiff that the LLC would be the managing member of ZAGS was made by Defendant to induce Plaintiff into investing in the LLC so that Defendant could take Plaintiff's money.

77. On June 3, 2010, prior to Plaintiff investing money in the LLC, 11 Broadway Owner LLC conveyed title to the Property to 11 Broadway HP LIB Housing Development Fund Company, Inc., a New York corporation, for the sum of $39,840,000.

78. Defendant did not disclose to Plaintiff that prior to Plaintiff making an investment in the LLC, 11 Broadway Owner LLC conveyed title to the Property to 11 Broadway HP LIB Housing Development Fund Company, Inc.

79. Defendant knew that 11 Broadway Owner LLC conveyed title to the Property to 11 Broadway HP LIB Housing Development Fund Company, Inc. at the time that he solicited Plaintiff to invest in the LLC.

80. On or about June 4, 2010, prior to Plaintiff making an investment in the LLC, 11 Broadway HP LIB Housing Development Fund Company, Inc. created a seven unit

condominium on the Property, creating two residential condominium units, three commercial condominium units and two parking condominium units.

81.     Defendant did not disclose to Plaintiff that prior to Plaintiff making an investment in the LLC, 11 Broadway HP LIB Housing Development Fund Company, Inc. created a seven unit condominium on the Property.

82.     Defendant knew that 11 Broadway HP LIB Housing Development Fund Company, Inc. created a seven unit condominium on the Property at the time that he solicited Plaintiff to invest in the LLC.

83.     At the time that Plaintiff made her investment in the LLC, Defendant knew that there was no possibility for Plaintiff to recover her investment in the LLC.

84.     Upon information and belief, at the time that Plaintiff paid the sum of $250,000 to the LLC, the LLC was not the managing member of ZAGS.

85.     Upon information and belief, at the time that Plaintiff paid the sum of $250,000 to the LLC, GS 11 Broadway Member LLC, was the managing member of ZAGS, contrary to the representation made by Defendant to Plaintiff.

86.     Upon information and belief, the LLC was never the managing member of ZAGS.

87.     On or about July 21, 2016, Plaintiff was told by Defendant that in or about 2018, certain Project debt was expected to mature and that debt would be refinanced, and there would possibly be some type of return of Plaintiff's investment in the LLC.

88.     On or about July 26, 2018, Plaintiff learned, through a letter from Goldman Sachs that GS 11 Broadway Member LLC and the LLC have an ownership interest in ZAGS and that ZAGS has an indirect interest in approximately $15,000,000 of subordinate debt to

the Project, which is subordinate to approimately $25,000,000 of other debt which matures in the year 2051.

89. On or about July 26, 2018, Plaintiff learned, through a letter from Goldman Sachs that it was unlikely that ZAGS would receive any monies from the Project until possibly the year 2051.

90. Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that any interests that the LLC would own in the Project would be subordinate to GSUIG Real Estate Member LLC, which held a $5,700,000 senior loan on the Project.

91. Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that any interests that the LLC would own in the Project would be subordinate to GSUIG Real Estate Member LLC, which held a $5,208,000 subordinate loan on the Project.

92. Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that any interests that the LLC would own in the Project would be subordinate to NMLL LLC, which held a $3,507,242 subordinate loan on the Project.

93. Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that any interests that the LLC would own in the Project would be subordinate to Citibank, N.A., which held a $8,900,000 subordinate loan on the Project.

94. Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that any interests that the LLC would own in the

Project would be subordinate to 11 Broadway Owner LLC, which held a $14,928,508 subordinate loan on the Project.

95.     Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that ZAGS would be a member of 11 Broadway Owner LLC.

96.     Defendant never disclosed to Plaintiff at any time, including when Defendant solicited Plaintiff to invest in the LLC that ZAGS would own an interets in 11 Broadway Owner LLC.

97.     Upon information and belief, after Plaintiff paid the $450,000 to the LLC, Defendant withdrew the $450,000 from the LLC and paid such proceeds to himself or disbursed the $450,000 for his personal use.

98.     Plaintiff has demanded that Defendant provide the tax returns and K-1's for the LLC for the calendar years 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018 and Defendant has refused to produce same.

99.     On or about October 9, 2019, Defendant provided a copy of a letter from Maniscalco & Picone, CPAs, P.C., stating "In order for us to generate K-1's for Eleven Broadway Managing Member LLC, it is necessary to receive all past K-1's from Goldman Sachs".

100.     Upon information and belief, Defendant never obtained any IRS K-1's from ZAGS in order for Plaintiff to receive tax losses based on her investment in the LLC.

101.     The LLC should have been receiving K-1's from ZAGS in which it was a member, which should have enabled the LLC to file tax returns and issue K-1's to its members, including Plaintiff.

102.    Defendant made fraudulent mispresentations to Plaintiff in order to cause Plaintiff to pay $450,000 to the LLC.

103.    Defendant made a material false representation to Plaintiff.

104.    Defendant intended to defraud Plaintiff by the false representations made by Defendant to Plaintiff.

105.    Plaintiff reasonably relied upon the representations made by Defendant.

106.    Plaintiff has suffered damages as a result of her reliance on the representations made by Defendant to Plaintiff.

107.    Plaintiff has been damaged by Defendant in an amount to be determined at trial, but an amount exceeding $1,000,000, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A SECOND CLAIM FOR RELIEF
## FOR UNJUST ENRICHMENT

108.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "107" of this complaint, with the same force and effect as if more fully set forth at length herein.

109.    There is no contract between Plaintiff and Defendant.

110.    Defendant was enriched from the payment of $450,000 by Plaintiff to the LLC.

111.    Defendant was enriched at Plaintiff's expense.

112.    Equity and good conscience militate against permitting defendant to retain what Plaintiff is seeking to recover.

113. Plaintiff has been damaged by Defendant in an amount to be determined at trial, but an amount exceeding $1,000,000, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A THIRD CLAIM FOR RELIEF
## FOR BREACH OF FIDUCIARY DUTIES

114. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "113" of this complaint, with the same force and effect as if more fully set forth at length herein.

115. A fiduciary duty existed between Plaintiff and Defendant.

116. Defendant breached the fiduciary duty that existed between Plaintiff and Defendant.

117. Plaintiff has been damaged as a result of the breach by Defendant of the fiduciary duty that existed between Plaintiff and Defendant.

118. Plaintiff has been damaged by Defendant in an amount to be determined at trial, but an amount exceeding $1,000,000, plus interest, costs, disbursements and attorney's fees.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
## FOR FRAUDULENT MISREPRESENTATION

119. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "118" of this complaint, with the same force and effect as if more fully set forth at length herein.

120. Defendant made material false representations to Plaintiff.

121. Defendant intended to defraud Plaintiff by the material false representations made by Defendant to Plaintiff.

122.    Plaintiff reasonably relief upon the material false representations made by Defendant to Plaintiff.

123.    Plaintiff suffered damages as a reslut of her reliance on the material false representations made by Defendant to Plaintiff.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

A.    On the first claim for relief for fraud and fraudulent inducement against Defendant in an amount to be determined at trial, but anticipated to be no less than $1,000,000, plus interest, costs, disbursements and attorney's fees; and

B.    On the second claim for relief for unjust enrichment against Defendant in an amount to be determined at trial, but anticipated to be no less than $1,000,000, plus interest, costs, disbursements and attorney's fees; and

C.    On the third claim for relief for breach of fiduciary duties against Defendant in an amount to be determined at trial, but anticipated to be no less than $1,000,000, plus interest, costs, disbursements and attorney's fees; and

D.    On the fourth claim for relief for breach of fraudulent misrepresentation against Defendant in an amount to be determined at trial, but anticipated to be no less than $1,000,000, plus interest, costs, disbursements and attorney's fees; and

E.    granting such other relief as may be proper.

Dated:      November 4, 2019
                 Great Neck, New York

Gary Rosen – GR8007
ROSEN LAW LLC
Attorneys for Plaintiff
LISA GUZZONE
216 Lakeville Road
Great Neck, New York 11020
516-437-3400

**DOCKET NO.**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

**LISA GUZZONE**

Plaintiff,

- against -

**MICHAEL ZAZZA**

Defendant.

**COMPLAINT**

**SIGNATURE (RULE 130-1.1a)**

_____

**GARY S. ROSEN, ESQ.**

**ROSEN LAW LLC
216 Lakeville Road
Great Neck, New York 11020
(516) 437-3400**