UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

––––––––––––––––––––––

19-CV-6202 (RER) (JAM)

––––––––––––––––––––––

LISA GUZZONE

VERSUS

MICHAEL ZAZZA

––––––––––––––––––––

**MEMORANDUM & ORDER**

March 29, 2024

––––––––––––––––––––

**RAMÓN E. REYES, JR., U.S.D.J.:**

Plaintiff Lisa Guzzone ("Plaintiff" or "Guzzone") commenced this action against her nephew defendant Michael Zazza ("Defendant" or "Zazza") in connection with investments associated with the development of 11 Broadway, Brooklyn, New York (the "Property" or the "Project"). (*See* ECF No. 1 ("Compl.")). Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 50 ("Pl.'s Mot.")) and Defendant's Cross-Motion for Summary Judgment. (ECF No. 51 ("Def.'s Mot.")). As discussed more fully below, all of Plaintiff's claims are untimely, and therefore, Defendant's Cross-Motion is granted. Consequently, Plaintiff's Motion is denied.

**BACKGROUND**

I.  Factual Background[1]

Guzzone, a Brooklyn resident at the time of commencing this action and now a full-time resident of Fort Lauderdale, Florida, is Zazza's aunt. (Compl. ¶ 6; ECF No. 51-1 ("Def.'s 56.1") ¶¶ 52–53; ECF No. 52 ("Pl.'s Counter 56.1") ¶¶ 52–53). She has a college degree and attended law school for one year. (Def.'s 56.1 ¶ 55; Pl.'s Counter 56.1 ¶ 55). For the past twenty to thirty years, Guzzone has worked in the family property management business. (Def.'s 56.1 ¶¶ 56–57; Pl.'s Counter 56.1 ¶¶ 56–57; ECF No. 51-15 ("Pl.'s Dep. Tr.") at 9:13-20:08). She briefly held a real estate license in 1996. (Def.'s 56.1 ¶ 64; Pl.'s Counter 56.1 ¶ 64; Pl.'s Dep. Tr. at 19:04–10). As recently as 2022, Plaintiff manages three multi-family buildings located in Brooklyn. (Def.'s 56.1 ¶¶ 59–63; Pl.'s Counter 56.1 ¶¶ 59–63; Pl.'s Dep. Tr. at 12:13–13:02).

Zazza, a New Jersey resident, formed Eleven Broadway Managing Member, LLC ("Eleven Broadway"), a Delaware limited liability company ("LLC"), on November 6, 2006. (Compl. ¶ 7; Def.'s 56.1, Ex. C at 1). At the time of formation, the purpose of Eleven Broadway was "to serve as a managing member of ZAGS Broadway, LLC . . ., a single purpose entity that will acquire, own, lease, sublease, operate, manage, improve, finance and sell [the Property]." (Def.'s 56.1, Ex. C at 6). ZAGS Broadway, LLC ("ZAGS") is a Delaware LLC that was also formed on November 6, 2006. (Def.'s 56.1, Ex. H). ZAGS has two members: GS 11 Broadway Member, LLC ("GS") and Eleven Broadway. (ECF No. 50-1 ("Pl.'s 56.1") ¶ 6; Def.'s 56.1 ¶ 6). GS represents Goldman Sachs' interest in the

---

[1] The Court assumes as true, for the purposes of the summary judgment motions, facts taken from the parties' depositions, exhibits, and respective Rule 56.1 statement of undisputed, material facts. *See Fierro v. Galluci*, No. 06-CV-5189 (JFB) (WDW), 2010 WL 1223122, at *1 (E.D.N.Y. Mar. 24, 2010).

Project. (Def.'s 56.1, Ex. H at 17, 71). Upon formation, ZAGS' purpose was to acquire, own, deal with, operate, and develop the Property. (*Id.* at 23). On that same date, ZAGS purchased the Property for $28,500,000. (ECF No. 50-3 ("Pl.'s Decl."), Ex. 10). ZAGS also obtained a $22,000,000 mortgage loan for the Property. (Pl.'s Decl., Ex. 8).

The following year, on November 16, 2007, ZAGS' Operating Agreement was amended (the "Amended ZAGS Agreement"), and GS became the managing member, while Eleven Broadway maintained status as a non-managing member. (Def.'s 56.1, Ex. I ("Amended ZAGS") at 1, 6). Under the Amended ZAGS Agreement, ZAGS' new corporate purpose became to own a membership interest in 11 Broadway Owner ("Owner"). (*Id.*). Owner is a Delaware LLC comprised of ZAGS as a minority member and L&M 11 Broadway, LLC ("L&M") as the managing member. (Pl.'s 56.1 ¶ 7; Def.'s 56.1 ¶ 12; Pl.'s Decl., Ex. 19). Through their relationship in Owner, ZAGS established a joint venture with L&M, a New York LLC, to develop the Property into a mixed-use residential building, with retail space, parking, and market-rate and affordable residential units. (Amended ZAGS at 1, 16). In line with this rearrangement, ZAGS sold the Property to Owner on November 16, 2007. (Pl.'s 56.1 ¶ 7; Def.'s 56.1 ¶ 12; Pl.'s Decl., Ex. 11.).

On June 22, 2010, Owner sold the Property to 11 Broadway HP LIB Housing Development Fund Company, Inc. ("LIB") for ten dollars and "other good and valuable consideration" for the purpose of refinancing the Property. (Pl.'s 56.1 ¶ 14; Def.'s 56.1 ¶ 14; Pl.'s Decl., Ex. 13 at 2, 10–12). The real property transfer reports attached to the deed indicate that the full sale price was $39,928,508. (Pl.'s Decl., Ex. 13 at 10–12). LIB is a corporation organized under Article XI of the New York Private Housing Finance Law and Section 402 of the Not-for-Profit Corporation Law. (*Id.* at 2).

In September 2010, Guzzone learned of the opportunity to invest in Eleven Broadway. (Pl.'s 56.1 ¶¶ 16–17). She characterizes Zazza's actions as a solicitation. (*Id.*). Plaintiff asserts that Defendant stated that she would receive a twenty-two percent return on her investment within three years, that Eleven Broadway owned the Property, that demolition and excavation work on the Property was complete, and that Eleven Broadway's purpose was to develop a fifteen-story building on the Property—all of which Defendant knew to be false. (*Id.* ¶¶ 16–19, 21–25, 31, 35; Pl.'s Counter 56.1 ¶ 75). Guzzone also asserts that Zazza failed to disclose the full corporate structure of the Project, including the role of Goldman Sachs and L&M, and the loans on the Property. (Pl.'s 56.1 ¶¶ 27–28, 40, 45). Meanwhile, Zazza maintains that no solicitation occurred, nor that he made any false statements. (Def.'s 56.1 ¶¶ 16, 18, 22–23, 29, 32, 49).

On September 30, 2010, Plaintiff and Defendant entered into a "Contract for Sale of Membership Interest," and in exchange for an initial investment of $250,000, Plaintiff received 2.5 percent of the membership interest in Eleven Broadway. (Pl.'s Decl., Ex. 3). By way of the same contract, Guzzone's acquaintance George Spanakos ("Spanakos") also invested $250,000 on behalf of his daughters Alexandria and Andrea Spanakos in exchange for 2.5 percent of Eleven Broadway. (*Id.*). Spanakos is a lawyer who represented Plaintiff's father once and her brother on several separate occasions, but he did not act in his legal capacity throughout this investment. (Def.'s 56.1, Ex. M at 8:12–10:21; 12:04–10). Plaintiff reasoned that this was a sound investment because she trusted Defendant as her nephew, knew of Defendant's past success in real estate, relied on Spanakos' experience, and believed the agreement to be "simple." (Def.'s 56.1 ¶¶ 71–73; 75–76; Pl.'s Counter 56.1 ¶¶ 71–73; 75–76).

4

After Guzzone and Spanakos invested, Eleven Broadway's operating agreement was amended ("Restated Agreement") to reflect the new ownership. (Pl.'s Decl., Ex. 7 ("Restated Agreement") at 1). The Restated Agreement states that Eleven Broadway's purpose is "to serve as a managing member of [ZAGS,] . . . a single purpose entity that will acquire, own, lease, sublease, operate, manage, improve, finance and sell [the Property]." (*Id.*). While Guzzone asserts that this was a fraudulent misstatement that Zazza knew to be false (Pl.'s 56.1 ¶ 25), Zazza contends that this was a typographical error in the Restated Agreement, which was prepared by Goldman Sachs, and that he never affirmatively stated that Eleven Broadway was a managing member of ZAGS. (Def.'s 56.1 ¶ 19).

A little over a year later, on November 8, 2011, in response to what Plaintiff again characterizes as a solicitation, she entered into another "Contract for Sale of Membership Interest" with Defendant. (Pl.'s 56.1 ¶ 32; Pl.'s Decl., Ex. 4). Guzzone made a second investment of $250,000 in exchange for 2.4 percent member interest in Eleven Broadway for herself and for 0.6 percent membership interest on behalf of her daughter. (Pl.'s 56.1 ¶ 32; Def.'s 56.1 ¶ 32; Pl.'s Decl., Ex. 4).

Over the years, Guzzone followed up with Zazza about when she would receive a return on her investment. (Pl.'s Decl., Ex. 15 at 1–4). For example, on February 7, 2015, she wrote, "Please lets [*sic*] meet to discuss about Goldman Sacs [*sic*]. I really need to see statements from them." (*Id.* at 3). Again, on October 12, 2016, Guzzone wrote:

> please send me [an] email with all paper work and any contact from you and Goldman sacs [*sic*] [.] I haven't received anything in regard to my 500,000 held with them and you . . . I really would feel better if I could have my full money back . . . I don't want to have to call [Spanakos] to ask him he gets offended that you're not telling me he says he shouldn't be the person in the middle of us. He feels that you should be much more attentive

>to me as your aunt and your family and it worries him that I keep telling him you're not telling me anything so please [Zazza] can you correct that?

(*Id.* at 4). Zazza responded to these emails with general updates or that he was waiting on more information from Goldman Sachs. (*Id.* at 15–18). Defendant sent multiple emails to Goldman Sachs attempting to get updates and answers about the Property. (*Id.* at 5–14). Eventually, on July 26, 2018, Defendant provided Plaintiff with a copy of a letter from Goldman Sachs (the "2018 Goldman Sachs Letter"), which stated that as a result of the various entities involved in the Project, Eleven Broadway's interest in the Property was subordinate to approximately twenty-five million dollars of other debt that is due to mature in 2051. (Pl.'s 56.1 ¶¶ 39–40; Def.'s 56.1 ¶¶ 39–40; Pl.'s Decl., Ex. 16 ("2018 GS Letter")). Guzzone claims that upon receipt of the 2018 Goldman Sachs Letter, she realized something was awry and that she was never going to receive any return on her investment. (Pl.'s 56.1 ¶ 44–45).

Subsequently, on December 16, 2019, LIB obtained another mortgage on the property for $6,500,000. (Pl.'s Decl., Ex. 14).

Since her investment, Plaintiff never received IRS K-1 forms showing Eleven Broadway's profits and losses, which Defendant claims Goldman Sachs never provided to him. (Pl.'s 56.1 ¶ 37; Def.'s 56.1 ¶ 37). Further, Guzzone argues that Zazza, knowing that there would not be any profit based on ownership interest in Eleven Broadway because it did not have any ownership in the Property, took her investments for his own personal gain. (Pl.'s 56.1 ¶ 49). While Defendant asserts that Plaintiff understood that investments have an "element of risk," Plaintiff claims she believed there was "zero" risk for this investment. (Def.'s 56.1 ¶ 74; Pl.'s Counter 56.1 ¶ 74).

II.	Procedural History

Plaintiff initiated this action on November 4, 2019. (*See* Compl.). Defendant moved to dismiss the case on January 2, 2020 (ECF No. 9), which was denied by District Judge I. Leo Glasser. (ECF No. 17). Subsequently, Defendant filed his Answer to the Complaint. (ECF Nos. 19, 20). Discovery was completed on February 21, 2023. (Order dated 2/21/2023). Thereafter, Plaintiff moved for summary judgment. (Pl.'s Mot.). Defendant opposed Plaintiff's Motion and cross-moved for summary judgment. (Def.'s Mot.). Plaintiff opposed Defendant's Cross-Motion and offered a reply in support of her Motion (ECF No. 52 ("Pl.'s Reply")), to which Defendant replied in further support of his Cross-Motion (ECF No. 55 ("Def.'s Reply.")).

## CHOICE OF LAW

Defendant argues that Delaware law applies to all claims because the claims arise out of issues related to Plaintiff's membership to Eleven Broadway and the choice-of-law clause in the Restated Agreement selects Delaware law. (Def.'s Mem. at 5; Pl.'s Decl., Exs. 3, 4, 7). The Restated Agreement states, "This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without regard to its principles of conflict of laws." (Restated Agreement at 9). Plaintiff, on the other hand, asserts that New York law applies because all events at issue took place in New York. (Pl.'s Reply at 6–8). Should Delaware law not apply, Defendant concedes that New York law applies. (Def.'s Mem. at 5).

When a federal court sits in diversity, as it does here, it "look[s] to the laws of the forum state in deciding issues regarding conflicts of law." *Wall v. CSX Transp. Inc.*, 471 F.3d 410, 415 (2d Cir. 2006) (citations omitted). New York law gives full effect to a

contractual choice-of-law provisions. *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). However, "a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract." *Power Up Lending Group, Ltd. v. Cardinal Energy Group, Inc.*, No. 16-CV-1545 (DRH) (ST), 2022 WL 426199, at *8 (E.D.N.Y. Feb. 11, 2022) (quoting *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (collecting cases)) (emphasis in original); *see also Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 333 (2d Cir. 2005) (New York courts "determine the scope of [choice-of-law] clauses under New York law, not under the law selected by the clause"). In turn, for a choice-of-law clause to apply to a tort action arising incident to the contract, the clause must be "sufficiently broad" so as to "encompass the entire relationship between the contracting parties." *St. Francis Holdings, LLC v. MMP Capital, Inc.*, No. 20-CV-4636 (MKB) (AYS), 2022 WL 991980, at *7 (E.D.N.Y. Mar. 31, 2022) (citations and quotations omitted); *Wall*, 471 F.3d at 416 (collecting cases).

Here, the choice-of-law clause is insufficiently broad to capture any of Plaintiff's tort claims because the provision only governs the terms of the Restated Agreement. *See, e.g.*, *Yookel, Inc. v. United States Steel Corp.*, No. 20-CV-4513 (KAM) (CLP), 2022 WL 542379, at *4 (E.D.N.Y. Feb. 23, 2022) (collecting cases) (the plaintiff's fraudulent inducement and unjust enrichment claims "do not sound in contract and thus are not governed by the" choice-of-law clause); *Williams v. Deutsche Bank Securities, Inc.*, No. 04 Civ. 7588 (GEL), 2005 WL 1414435, at *5 (S.D.N.Y. June 13, 2005) (finding that a similarly worded choice-of-law clause did not govern a tort claim for breach of fiduciary duty); *St. Francis Holdings*, 2022 WL 991980, at *7–8 (when the choice-of-law provision

8

governed "any action or proceeding arising under the contract," the provision was not "sufficiently broad" to cover the plaintiffs' tort claims for fraudulent inducement); *TransPerfect Glob., Inc. v. Lionbridge Techs., Inc.*, No. 19 Civ. 3283 (DLC) (SN), 2020 WL 1322872, at *7 (S.D.N.Y. Mar. 20, 2020) ("Where a choice-of-law clause specifies only that the contract will be 'governed by and construed in accordance with' the law of a certain state, New York courts hold that the clause does not control the law that applies to tort claims."); *Burns v. Delaware Charter Guarantee & Trust Co.*, 805 F. Supp. 2d 12, 22 (S.D.N.Y. 2011) (the choice-of-law provision applied to breach of contract claims, but not to the tort claims for breach of the duty of care, fraud, or otherwise failing to fulfill obligations to the plaintiffs). Therefore, the choice-of-law clause does not govern Plaintiff's claims, and because no further conflict exists, New York law applies.

## THE MOTIONS FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on her claims for breach of fiduciary duty, fraud, and unjust enrichment, asserting that Defendant solicited her $500,000 investment in a real estate opportunity that would never see a return and by which Defendant personally gained $500,000. (Pl.'s Mot.; s*ee generally* ECF No. 50-2 ("Pl.'s Mem.")). Defendant cross moves for summary judgment, arguing that Plaintiff has not met her burden of proof and that rather than a fraudulent scheme, the investment has simply not yet been fruitful. (Def.'s Mot.; *see generally* ECF No. 51-2 ("Def.'s Mem.")). The Court finds that all of Plaintiff's claims are time barred.[2] Accordingly, Defendant's Cross-Motion is granted, and Plaintiff's Motion is denied.

---

[2] At the motion to dismiss stage, the Court denied Defendant's motion because: (1) for the purposes of determining whether the claims fell outside the statute of limitations, there were not enough facts pre-discovery to determine when Plaintiff became on notice of the alleged fraud and (2) the circumstances

I. <u>Summary Judgment Legal Standard</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of establishing that no material fact is in dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Once the moving party meets its burden, the opposing party "'must come forward with specific facts showing that there is *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties" does not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48. In turn, an opposing party must set forth "concrete particulars" to show that a trial is necessary. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quotations omitted).

II. <u>Plaintiff's Fraud Claims are Time-Barred</u>

Plaintiff asserts that *leading up to and at the time of her investments*, Defendant: (1) misrepresented that Eleven Broadway was a managing member of ZAGS and that it owned the Property outright (Pl.'s 56.1 ¶¶ 19, 25, 29); and (2) omitted material

---

surrounding the investments were plead with sufficient particularly to survive Federal Rule of Civil Procedure Rule 9(b)'s heightened pleading standard. (*See generally* ECF No. 17). Now, after the completion of discovery, however, the Court has enough undisputed facts to establish that Plaintiff's claims are indeed beyond the statute of limitations.

10

information, such as the superior debt associated with the Property, the extent of Goldman Sachs' involvement in the Project, and the role of any of the other entities, such as L&M, Owner and LIB (Pl.'s 56.1 ¶¶ 27–28, 40, 45).

    A.    <u>Guzzone's Fraud Claims are Untimely</u>

The New York statute of limitations for fraud-based claims is the greater of six years from the date of the alleged fraud or two years from the date of plaintiff's actual or reasonably possible discovery of that fraud. N.Y. C.P.L.R. § 213(8); *Hanlon v. Gliatech, Inc.*, No. CV-07-1737 (SJF) (AKT), 2008 WL 4773430, at *3 (E.D.N.Y. Oct. 27, 2008) (actions for fraudulent misrepresentation must be brought within six years from the actionable conduct or two years from the discovery of the fraud); *Asbeka Indus. v. Travelers Indemnity Co.*, 831 F. Supp. 74, 80 (E.D.N.Y. 1993) (same for fraudulent inducement claims).

Accrual of the fraud cause of action occurs under the two-year discovery rule when facts revealing the alleged fraud "were discovered or . . . could with reasonable diligence have been discovered." N.Y. C.P.L.R. § 203(g); *Singleton v. Clash*, 951 F. Supp. 2d 578, 587 (S.D.N.Y. 2013) ("[t]he clock begins to run when the plaintiff has 'inquiry notice' of his injury, namely when he discovers or reasonably should have discovered the . . . injury." (alterations in original) (quoting *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012)); *see also Meyer v. Seidel*, 89 F.4th 117, 131 (2d Cir. 2023) ("The inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which the fraud could be reasonably inferred.") (quotations omitted and alterations adopted). "[I]n applying a discovery accrual rule, [the Supreme Court] ha[s] been at pains to explain that discovery

11

of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555, (2000). Thus, "[u]nder the discovery rule, a claim accrues when a plaintiff comes into possession of the critical facts that he has been hurt and who inflicted the injury." *Singleton*, 951 F. Supp. 2d at 588 (quoting *Rotella*, 528 U.S. at 556) (quotations omitted). Put differently, a claim has accrued "when the plaintiff knows, or should know, enough to protect himself by seeking legal advice." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 142 (2d Cir. 2011) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)) (quotations omitted). A plaintiff's failure to investigate her claim at that juncture will not be excused by delayed accrual, because such delay would undermine the purposes of the applicable statute of limitations. *United States v. Kubrick*, 444 U.S. 111, 123–24, (1979). This is so despite the complexity of identifying the elements of a cause of action because the elements themselves are complex or may have been concealed. *See Rotella*, 528 U.S. at 556.

Courts properly dismiss fraud claims "pursuant to the two-year discovery rule when the alleged facts . . . establish that a duty of inquiry existed and that an inquiry was not pursued." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155–56 (2d Cir. 2012). To give rise to inquiry notice, "[t]he triggering . . . data must be such that it relates *directly* to the misrepresentations and omissions the [p]laintiffs later allege in their action *against the defendants*." *Meyer*, 89 F.4th at 135 (emphasis in original) (quotations omitted). "[T]he court will impute knowledge of what a plaintiff in the exercise of reasonable diligence should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 362 (2d Cir. 2013) (citation omitted). In other words, "[w]hen

a plaintiff shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Cruden v. Bank of New York*, 957 F.2d 961, 973 (2d Cir. 1992) (quotation omitted).

Here, the statute of limitations for Guzzone's fraud-based claims expired on November 8, 2017, six years after she signed the second "Contract for Sale of Membership Interest" with Zazza on November 8, 2011. (Pl.'s 56.1 ¶ 32; Pl.'s Decl., Ex. 4). This lawsuit was filed on November 4, 2019, more than six years after Plaintiff's claims accrued. (*See* Compl.). Thus, the question is whether Guzzone was put on "inquiry notice" about the alleged fraud in the two years prior to November 4, 2019, so as to avail herself of the discovery rule and to have brought timely claims. *See LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 154 (2d Cir. 2003). The test for whether inquiry notice exists is an objective one. *See Meyer*, 89 F.4th at 131; *see also Salinger v. Projectavision*, Inc., 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996) ("dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures themselves"); *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998) ("the question of inquiry notice need not be left to a finder of fact").

Guzzone fails to establish that she is entitled to avail herself of the discovery rule. The Second Circuit has found that a plaintiff cannot rely on the discovery rule when she "failed to identify any actual specific misrepresentation prior to initiating suit." *Koral v. Saunders*, 36 F.4th 400, 409 (2d Cir. 2022) (when the plaintiff sued her ex-husband's estate claiming that the ex-husband fraudulently misrepresented the value of his real estate investments at the time of their divorce ten years prior and that she only learned about the fraud at the time of his death, the discovery rule could not be invoked because

13

the plaintiff, rather than uncovering facts prior to the action that triggered inquiry notice, "filed her complaint, *and then* used discovery . . . to validate her suspicions"). Likewise, here, Guzzone does not identify any specific misrepresentation that activates the discovery rule. Although Guzzone asserts that she only became aware of the various entities involved in the Project and the superior debt on the Property by way of the 2018 Goldman Sachs Letter (Pl.'s 56.1 ¶ 44–45), nothing indicates that she did not have access to this information prior to receiving the letter. Long before Guzzone's first investment, Eleven Broadway became a minority member of ZAGS, and ZAGS established a joint venture with L&M, become a member of Owner, and sold the Property to Owner, which then transferred the Property to LIB. (Amended Zags; Pl.'s 56.1 ¶ 7; Def.'s 56.1 ¶ 12; Pl.'s Decl., Exs. 11, 19). All deeds, mortgages, and LLCs involved in the Project were and remain searchable as a matter of public record. (*See* Pl.'s Decl., Exs. 8–11, 13, 14, 30). At the time of investing, Guzzone knew about Goldman Sachs' involvement (Pl.'s Tr. at 44:06–19), and she visited the Property when construction was underway, where she would have seen signage about the Property's owner. (*Id.* at 53:03–54:03; Pl.'s Decl., Ex. 32 ("Def.'s Dep. Tr.") at 90:04–09); *see also* Admin. Code § 3301.9.1 (the New York City Building Code requires the "corporate name, address, and telephone number of the owner of the property" to be listed at a construction site).

      Furthermore, Plaintiff's own statements demonstrate that she merely continued to develop suspicions. Since first investing in September 2010, Guzzone believed that she was due to receive a twenty-two percent return within three years. (Pl.'s Counter 56.1 ¶ 75). On February 7, 2015, Plaintiff sent three emails to Defendant seeking updates about the Project, and again, on October 12, 2016, she sent an email asking for information and

14

for her money to be returned. (Pl.'s Decl., Ex. 15 at 1–4). At her deposition, Guzzone said, "As time went on I realized that there was something wrong with this project, not with the project but with my involvement with [Zazza] because the money wasn't coming back and [Zazza] wasn't forthright and wasn't always as responsive . . . [.]" (Pl.'s Dep. Tr. at 56:06–14). As such, Guzzone never uncovered any fact to support her fraud claims prior to commencing this action. Instead, she only demonstrates her mounting suspicion that fraud occurred. "The discovery rule is not a tool to aid speculation or to validate a hunch." *Koral*, 36 F.4th at 409. Therefore, Plaintiff cannot invoke the discovery rule.

Even if Guzzone could articulate specific misrepresentations, she had adequate opportunity to investigate the alleged fraud and failed to do so. The information required to trigger the duty to inquire "need not detail every aspect of the subsequently alleged fraudulent scheme." *Cohen*, 711 F.3d at 361 (citation omitted). When the duty to inquire exists but was not realized, knowledge is imputed on the plaintiff. *Id.*; *see also Poulard v. Delphin*, No. 23 Civ. 791 (ER), 2024 WL 217766, at *6 (S.D.N.Y. Jan. 19, 2024). As stated above, there is no dispute that Guzzone had plenty of opportunity and means to exercise due diligence into the Project. Also relevant is the undisputed fact that Plaintiff has been acquainted with the real estate business for over thirty years, both managing her own buildings and helping her father in some of his larger projects. (Pl.'s Tr. at 8:07; 9:13–20:08). Furthermore, Plaintiff believed that she was due a return on her investment within three years and had suspicions that something was wrong when she sent Defendant emails in February 2015 and October 2016. Yet, she failed to take any action. Although Guzzone points to the 2018 Goldman Sachs Letter as putting her on notice about the fraud, all information in the letter could have been found with the basic exercise of due

15

diligence at any time between 2010 and 2016. Therefore, Plaintiff's fraud-based claims are precluded by the statute of limitations.

### B. Guzzone's Fraud Claims are Not Saved by Equitable Tolling

In theory, Guzzone's claims could be saved by the doctrine of equitable tolling, also known as equitable estoppel. "[E]quitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citations omitted); *see also Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006). To invoke equitable estoppel, a plaintiff "must articulate particular acts by the defendant that prevented the timely filing of an action*." Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 730 (S.D.N.Y. 2020). The doctrine "requires that the plaintiff was misled by 'an actual misrepresentation' or omission of a required disclosure, that the plaintiff was diligent in seeking the facts underlying its claim, and that the defendant's concealment of the alleged fraud entailed 'more than the fraud itself, unconfessed.'" *Accent Delight Int'l Ltd. V. Sotheby's*, No. 18 Civ. 9011 (JMF) (VF), 2023 WL 2307179, at *12 (S.D.N.Y. Mar. 1, 2023) (quoting *Koral*, 36 F.4th at 410–11); *Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dept 2003) ("equitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action"). "Equitable estoppel will not toll a limitations statute . . . where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations." *Koral*, 36 F.4th at 411 (quotation omitted).

Here, Guzzone does not establish any facts of concealment separate from the substantive basis of her cause of action. Even so, the undisputed facts are: (1) all entities involved in the Project were searchable a matter of public record at the time of investment (Pl.'s Decl., Exs. 8–11, 13, 14, 30); (2) Plaintiff knew of Goldman Sachs' involvement before she invested (Pl.'s Dep. Tr. at 53:03–54:03); (3) Plaintiff visited the construction site around the time of her initial investment (Pl.'s Tr. at 44:06–19; Def.'s Dep. Tr. at 90:04–09); (4) Plaintiff believed she would receive a twenty-two percent on her investment within three years and knew she had not received that return in that time (Pl.'s Counter 56.1 ¶ 75; Pl.'s Dep. Tr. at 56:06–14); and (5) Plaintiff sent multiple emails to Defendant asking for updates and ultimately demanding her money back (Pl.'s Decl., Ex. 15 at 1–4). All of these facts demonstrate that Guzzone had at the least a suspicion of something being amiss, and reasonable diligence could have revealed the corporate structuring of the Project and the loans on the Property. Plaintiff, however, failed to make any inquiry whatsoever. Therefore, equitable tolling does not apply, and Plaintiff's fraud-based claims are time barred.

III. <u>Guzzone's Breach of Fiduciary Duty and Unjust Enrichment Claims are Untimely</u>

Under New York law, a three-year statute of limitations applies to Guzzone's breach of fiduciary duty claims because the only remedy sought is monetary damages and the fraud alleged is "incidental" to the fiduciary duty claim. *See Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 396 (E.D.N.Y. 2018) (when the remedy is purely monetary, courts apply a three-year statute of limitations period); *Accent Delight Int'l Ltd.*, 2023 WL 2307179, at *12 ("Whether to apply the fraud statute of limitations to a non-fraud claim turns on whether the fraud is essential or incidental to the non-fraud

17

claim.") (quotations omitted); *Corcoran v. New York Power Authority*, 202 F.3d 530, 545 (2d Cir. 1999) (a fraud claim is not incidental "only" when (1) "the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim" and (2) "the injuries caused by the fraud are distinct from the injuries caused by the alternate claim"); *see also* N.Y. C.P.L.R. §§ 213(1), 213(8), 214(4). Likewise, the statute of limitations for unjust enrichment is three years where, as here, the plaintiff seeks only monetary damages. *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 596 (S.D.N.Y. 2018) (quotation omitted). Further, for unjust enrichment, the clock begins to run "'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.'" *Cohen*, 711 F.3d at 364 (quoting *Coombs v. Jervier*, 74 A.D.3d 724 (2d Dept 2010)); *see also St. Martinus Univ., N.V. v. SMU LLC*, No. 21-CV-1888 (DG) (CLP), 2023 WL 2969284, at *12 (E.D.N.Y. Mar. 9, 2023). Here, the claims were brought nine years after Plaintiff's initial investment. Accordingly, the statute of limitations for both the claims of breach of fiduciary duty and unjust enrichment have elapsed.

However, as noted above, the doctrine of equitable estoppel may overcome the statute of limitations when "the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Abbas*, 480 F.3d at 642 (citations omitted). Equitable tolling "only should apply when there are 'extraordinary circumstances' present that would excuse a [plaintiff's] failure to comply with the requirement to commence suit within the applicable limitations period." *St. Martinus Univ., N.V.*, 2023 WL 2969284, at *14 (citations omitted). "To prevail with an equitable estoppel argument, the plaintiff must articulate particular acts by the defendant that prevented the timely filing of an action."

18

*Wei Su*, 490 F. Supp. 3d at 730. Careful or intentional concealment or deceptive conduct may satisfy this requirement. *See id.*; *see also City of Almaty v. Sater*, 503 F. Supp. 3d 51, 66 (S.D.N.Y. 2020). "If the plaintiff alleges that a defendant breached a fiduciary duty, the defendant's concealment of the facts underlying the claim provides a basis for equitable estoppel, even without actual misrepresentation, because the defendant had an obligation to disclose those facts." *Murphy v. Morlitz*, 751 F. App'x 28, 31 (2d Cir. 2018) (summary order) (quotation omitted). In addition, for both claims of fiduciary duty and unjust enrichment, "the plaintiff must meet the due diligence requirement," that is, they must bring the action within a reasonable time after the facts giving rise to the tolling have ceased. *Wei Su*, 490 F. Supp. 3d at 731 (citations omitted).

Here, the undisputed facts demonstrate that equitable estoppel may not be invoked. With respect to the breach of fiduciary duty claim, Guzzone alleges that Zazza breached by failing to disclose essential information about the Project in order to solicit her $500,000 investment. (Pl.'s Mem. at 16–17). However, even if Defendant did conceal information that could have prevented Plaintiff from bringing a claim within three years of her initial or second investment, she was aware, at least by October 2016, that Defendant was failing to disclose information when she requested "all paperwork" and stated, "I haven't received anything in regard to my 500,000[.]" (Pl.'s Decl., Ex. 15 at 4).

Likewise, as to Plaintiff's claim for unjust enrichment, she asserts that "Defendant was unjustly enriched by taking possession of Plaintiff's $500,000 investment" because she invested in a "single purpose entity that no longer had a purpose" and of which Defendant was the sole beneficiary. (Pl.'s Mem. at 21–22). Putting aside any questions of validity as to this claim, the wrongful act which would have started the clock for the

19

three-year statute of limitations was the signing of the contracts whereby Plaintiff purchased an equity interest in Eleven Broadway. *See Cohen*, 711 F.3d 353 at 364. Construing facts in favor of Guzzone, if Zazza had concealed information that induced her into signing those contracts, that concealment came to light when her expectations for a return on investment within a three-year window were not met, which eventually caused her to demand that Zazza show her paperwork from Goldman Sachs and return her investment in October 2016. (*See* Pl.'s Counter 56.1 ¶ 75; Pl.'s Decl., Ex. 15 at 1–4).

Moreover, in connection with both claims, even if Plaintiff sufficiently established concealment giving rise to equitable estoppel, Plaintiff failed to bring the action within a reasonable time. Despite Plaintiff's knowledge that something was flawed in October 2016, she failed to commence this action until November 2019, more than three years later. (*See* Compl.). Therefore, equitable tolling does not apply, and the claims for breach of fiduciary duty and unjust enrichment are beyond the statute of limitations.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Cross-Motion for Summary Judgment is granted in its entirety. The Clerk of the Court is directed to close the case.

SO ORDERED.

Hon. Ramón E. Reyes, Jr.
Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2024.03.29 12:30:46 -04'00'

---

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 29, 2024
Brooklyn, NY